## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| George W. Liebmann<br>and<br>Luis (Janer) Rullan<br>*Appellants*<br><br>v.<br><br>Jill K. Goden<br>*Appellee* | Civil Action Nos.  CCB-21-2887<br>CCB-21-3170<br>CCB-21-3171<br><br>Bankruptcy No.   NVA-14-22934 |

### **MEMORANDUM**

This dispute involves a decades-long conflict between Luis Rullan and various members of the Goden family. Years of scorched-earth litigation between the parties have engulfed the judiciary. From state to federal courts, trial to appellate courts, judicial forums of all shapes and sizes have touched this dispute in some fashion. Little progress has been made.

Pending before the court is Luis Rullan's appeal of several orders entered by the United States Bankruptcy Court for the District of Maryland, one of the many courts involved in the widespread litigation. Over Rullan's objection, the bankruptcy court (1) dismissed debtor Jill Goden's bankruptcy case, (2) denied Rullan's motion for sanctions against Goden, and (3) "constructively denied" Trustee George Liebmann's motion to employ counsel. Rullan asks this court to reverse the bankruptcy court's decision and reassign the case to a different bankruptcy judge on remand. The parties have fully briefed the issues, and the court heard oral argument on April 8, 2022.

For the reasons below, the court affirms: (1) the bankruptcy court's order dismissing Goden's bankruptcy; (2) the bankruptcy court's order denying Rullan's motion for sanctions;

(3) the bankruptcy court's "constructive denial" of the Trustee's then-outstanding motions. The court also denies Rullan's request for reassignment as moot.[1]

## BACKGROUND[2]

In 1990, Luis Rullan—only six years old at the time—traversed the winding country roads of the Shenandoah Mountains to attend a camp owned and operated by Jill Goden and her family. (ECF 4-1, Compl., at ¶ 19.) Over the next twenty years, Rullan and his siblings continued to attend the camp as campers or counselors. (*Id.*) Rullan grew close with the Godens during this time, even considering them "like family" at one point. (*Id.* at ¶ 20.)

In 2010, Jill Goden and her father, Fred Greenberg, allegedly offered Rullan the opportunity to join Goden as a partner in managing the camp. (*Id.* at ¶ 21.) Rullan agreed, and the parties allegedly entered into a partnership agreement and a securities purchase agreement. (*Id.* at ¶ 2.) The partnership agreement addressed the ownership and management of the entities historically constituting the camp: Timber Ridge, Inc. ("TRI"), Youth World Ltd. ("YWL"), and Youth World International Company, Ltd. ("YWI"). (*Id.*)

The problem, according to Rullan, was that Goden concealed and misstated information about the financial health of the camp. (*Id.* at ¶¶ 25–27.) Allegedly, Rullan alone contributed

---

[1] On November 10, 2021, the Trustee filed an appeal (or in the alternative, an application for a writ of mandamus) of the bankruptcy court's failure to rule on various motions. This is docketed as *Liebmann v. Goden*, CCB-21-2887.

On December 1, 2021, Rullan filed an appeal of the bankruptcy court's orders dismissing the bankruptcy case (ECF 451 in Case No. 14-22934-NVA) and denying the motion for sanctions (ECF 445 in Case No. 14-22934-NVA.) This is docketed as CCB-21-3170.

And on December 2, 2021, the Trustee filed another notice of appeal from the bankruptcy court's order of dismissal and its failure to rule on another motion. This is docketed as CCB-21-3171.

At the request of Mr. Rullan and Mr. Liebmann, the three cases were consolidated. (*See* ECF 6 in CCB-21-3171.) This memorandum opinion addresses all three appeals.

[2] The parties have a lengthy history. The court recites the minimum facts necessary to resolve this appeal.

$55,000 to YWI, which was supposed to be funded by both Rullan and Goden. (*Id.* at ¶ 35.) And despite Goden contributing nothing to YWI, she allegedly received a 50% interest in the entity. (*Id.*) Further, Goden allegedly enticed Rullan to lend money to the camp several times without disclosing the extent of the financial issues plaguing the camp. (*Id.* at ¶¶ 39-41.)

The once family-like relationship soon became adversarial. On August 14, 2012, Rullan filed a complaint in this court, the United States District Court for the District of Maryland ("District Court"), naming Jill Goden, Fred Greenberg, and the various summer camp entities as defendants. (ECF 1, Compl., *Rullan v. Goden*, 1:12-cv-02412-CCB ("2012 Litigation").) In the 2012 Litigation, Rullan asserted the following claims against Goden: (1) breach of contract; (2) negligence; (3) breach of fiduciary duty; (4) quantum meruit/unjust enrichment; (5) financial accounting; (6) conversion of property and invasion of property; (7) fraud and fraudulent inducement; and (8) shareholder oppression. (ECF 146, Am. Compl., *Rullan v. Goden et al.*, 1:12-cv-02412-CCB.)

As the 2012 Litigation progressed into the discovery stage, Rullan was about to depose Goden. On August 14, 2014, just two days before her scheduled deposition, Goden filed a voluntary petition for bankruptcy under chapter 13 of 11 U.S.C. § 101. On August 18, 2014, Ms. Goden filed two dissolution actions in the Baltimore County Circuit Court.[3]

Soon after Goden filed for bankruptcy, Rullan filed an adversary proceeding in the bankruptcy court. Rullan's complaint in the adversary proceeding alleged that Goden should be denied a discharge, that his claims are non-dischargeable, and that Goden fraudulently conveyed assets in violation of state law. The bankruptcy petition had the effect of automatically freezing

---

[3] *See* Case Nos. 03-C-1400892 (YWL) and 03-C-14008891 (YWI).

other proceedings between Goden and Rullan. For example, the 2012 Litigation was automatically stayed subject to 11 U.S.C. § 362(a). Rullan recognized that he would not be entitled to recovery in the bankruptcy court unless he received a favorable judgment in the District Court. So Rullan sought permission from the bankruptcy court to pursue the 2012 Litigation.[4] On November 17, 2014, the bankruptcy court entered a stipulation and consent order that modified the automatic stay to allow Rullan to litigate the 2012 Litigation to judgment in the District Court. (ECF 4-14, Stipulation, at 2.)

Given the ongoing litigation in the District Court, on March 20, 2015, the bankruptcy court granted Goden's motion to suspend "all proceedings" in the bankruptcy case and Rullan's adversary proceeding until after the final resolution of Rullan's 2012 District Court Case. (ECF 16-1, at AA0001). Rullan continued to move the gravitational center of the litigation beyond the bankruptcy court. On October 11, 2017, Rullan decided that the fraudulent conveyance claim ("Fraudulent Conveyance Action") should be heard in the District Court, and the bankruptcy court granted Rullan's motion to that effect. After severing the Fraudulent Conveyance Action, the only issue remaining in the Adversary Proceeding was Rullan's request for a denial of discharge. The Fraudulent Conveyance Action is pending before the District Court. (*See Rullan v. Goden et al.*, 1:17-cv-03741-CCB.)

Rullan, however, became more interested in the bankruptcy court as a forum for litigation after discovering that Goden had allegedly committed a series of bad acts. On December 31, 2019, Mr. Rullan filed a motion for sanctions seeking attorneys' fees, a permanent injunction prohibiting

---

[4] In the filing, Rullan noted that the 2012 Litigation "consists entirely of state-law causes of action," and did not involve "rights conferred or obligations imposed by the Bankruptcy Code." (ECF 16-11, Suppl. to Appellant's Br., at AA1192 (quoting Stay Relief Motion at ¶ 25).)

Goden from filing for bankruptcy, and a denial of discharge. Broadly speaking, the motion alleged that Goden had filed for bankruptcy in bad faith, concealed assets, perjured herself, and fraudulently conveyed assets. (ECF 16-11, at AA1197.)

As for her bankruptcy schedules, Rullan alleged Goden failed to disclose her inherited jewelry, which was appraised at $143,400, while also failing to disclose that she had transferred $188,000 from the camp's operating company to her husband's company. (ECF 16-7, at AA0870, AA0924–25.) Moreover, Rullan alleges Goden failed to disclose her interest in other corporate entities, such as the Timber Ridge Camp, Inc., while also failing to disclose transfers to companies that her husband owned, such as Cacapon River Camps Inc. and Cacapon Camps Inc. (ECF 16-1, at AA0095.)

Rullan also alleges Goden committed other bad acts, such as seeking to dissolve certain corporate entities without the Trustee's permission, misrepresenting her tax liabilities, embezzling estate funds through the camp, and using estate funds to pay for her personal expenses. Finally, Rullan alleges Goden misrepresented to the bankruptcy court the fact that she had lined up a "short sale" of one of her properties while also impermissibly retaining rents for her property in violation of a bankruptcy court order. (ECF 15, Appellant's Br., at 11–14.) The Trustee also became concerned with Goden's actions during this time. On March 3, 2021, the Trustee moved to employ Rullan's counsel as special counsel to help identify fraudulently conveyed or concealed assets. (ECF 16-9, at AA0980.)

On July 7, 2020, the bankruptcy court modified the suspension to allow Rullan to prosecute his motion for sanctions. (ECF 16-4, at AA0382). Even assuming the factual basis for Rullan's allegations, the bankruptcy court ultimately denied the motion on September 15, 2021 (ECF 16-11, at AA1167.) After several years of litigation, the bankruptcy court grew concerned that

Goden's bankruptcy lacked a proper bankruptcy-related purpose. (*Id.* at AA1201.) The bankruptcy court found that "the case ha[d] become little more than a battleground" for Goden and Rullan "to play out their hostilities[.]" (*Id.* at AA1186.) On July 27, 2021, the bankruptcy court issued an Order to Show Cause Why Case Should Not Be Dismissed. (*Id.* at AA1135.) Rullan opposed dismissal, (*id.* at AA1144), as did the Trustee, (*id.* at AA1138). Goden supported dismissal. (*Id.* at AA1154.)

On November 12, 2021, the bankruptcy court dismissed the bankruptcy case after reviewing the parties' responses to the order to show cause. (*Id.* at AA1186.) Rullan and the Trustee filed the present appeal.

## LEGAL STANDARD

This court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re: Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 231 (4th Cir. 2006). Generally, a bankruptcy court has the discretion to dismiss a case for cause under Section 707(a). *In re Murray*, 900 F.3d 53, 58–59 (2d Cir. 2018) (citing *In re Smith*, 507 F.3d 64, 73 (2d Cir. 2007)). On appeal, courts "review the bankruptcy court's sanctions order for abuse of discretion." *In re Jemsek Clinic, P.A.*, 850 F.3d 150, 156 (4th Cir. 2017). "[T]he decision of a bankruptcy court 'must be affirmed if the result is correct' even if the lower court relied upon 'a wrong ground or gave a wrong reason.'" *Okoro v. Wells Fargo Bank, N.A.*, 567 B.R. 267, 271 (D. Md. 2017) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)). Accordingly, this court may "affirm the bankruptcy court on any ground supported by the record." *Okoro*, 567 B.R. at 271 (citations omitted).

## ANALYSIS

### I.    The Dismissal of Goden's Bankruptcy

The Bankruptcy Code aims to find compromise between "the interests of both creditors and debtors in the distribution of an insolvent party's assets." *Janvey v. Romero*, 883 F.3d 406, 410 (4th Cir. 2018). The elaborate statutory scheme serves creditors by consolidating and distributing the debtor's assets in an "equitable and orderly process," while also aiding the debtor, who may seek a "fresh start" after emerging from bankruptcy. *Id.* at 410–11. Debtors have several tools under the Bankruptcy Code to manage their debt. One such device is Chapter 7, which allows debtors to discharge outstanding debt in exchange for liquidating and distributing their nonexempt assets to creditors. *Id.* at 411.

A bankruptcy court need not entertain a Chapter 7 petition indefinitely. A bankruptcy court may dismiss a Chapter 7 petition "for cause" after notice and a hearing. 11 U.S.C. § 707(a). Although the Bankruptcy Code lists circumstances constituting "cause,"[5] the term is "open-ended" and the situations listed "are illustrative rather than exhaustive." *Janvey*, 883 F.3d at 411. "Courts have broad authority to determine what is cause for dismissal under § 707(a): '[C]ause is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process.'" *In re Krueger*, 812 F.3d 365, 370 (5th Cir. 2016) (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986)). Petitions that "serve no legitimate bankruptcy purpose," for example, may be dismissed for cause. *Id.* at 370–71 (citing *Kelley ex rel. Petters Co., Inc. v. Cypress Fin. Trading Co., L.P.*, 620 Fed. Appx. 287, 289 (5th Cir. 2015) (per curiam)). Determining cause is a fact-specific endeavor and a "variety of factors"

---

[5] The Bankruptcy Code includes the following examples of "cause" for dismissal: "(1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees or charges required under chapter 123 of title 28; and (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee." 11 U.S.C. § 707(a). None of these situations apply to the present case.

may support dismissal. *In re Murray*, 900 F.3d at 60; *see also 6 Collier on Bankruptcy* § 707.03 (Richard Levin & Harry J. Sommers eds., 16th ed. 2018) ("The court has substantial discretion in ruling on a motion to dismiss under section 707(a), and in exercising that discretion must consider any extenuating circumstances, as well as the interests of the various parties."). If a petition is an "[i]nappropriate use of the Bankruptcy Code," then a court need not find "bad faith" present to dismiss a petition for cause. *In re Murray*, 900 F.3d at 60.

Beyond Section 707, bankruptcy courts have broad powers to enforce the provisions of the Bankruptcy Code. A court may even order dismissal *sua sponte*:

> [A] court may issue *any* order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of any issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking *any action* or making *any determination* necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphasis added). Bankruptcy courts may exercise this authority to dismiss Chapter 7 cases for cause. *See, e.g.*, *In re G.L.A.D. Enterprises, LLC*, 2019 WL 5586962, at *4 (Bankr. D. Conn. Oct. 28, 2019), *aff'd*, 2020 WL 2813071 (D. Conn. May 29, 2020) (dismissing Chapter 7 bankruptcy *sua sponte* under Section 105 and Section 707).

Here, the bankruptcy court identified several factors supporting dismissal for cause: (1) Goden's bankruptcy case was essentially a two-party dispute; (2) both Goden and Rullan had misused the bankruptcy case to some degree; (3) there were no assets available for liquidation or distribution; and (4) the interests of the creditors, the debtor, and the estate were better served by dismissal. (ECF 16-11, at AA1187–88.) The bankruptcy court's findings were well within its sound discretion. This court will not disturb those conclusions absent error in fact or law. Having found none, the court will affirm the order of dismissal.

*A. Goden's Bankruptcy Case Was Essentially A Two-Party Dispute*

A court may dismiss two-party disputes for cause because those cases undermine the collective nature of bankruptcy. The Bankruptcy Code is "not intended to provide an additional forum for the continuation of litigation over what is essentially a two-party dispute." *See In re Crown Fin., Ltd.*, 183 B.R. 719, 723 (Bankr. M.D.N.C. 1995) (dismissing Chapter 11 filing for abuse of the bankruptcy process); *see also In re Paolini*, 312 B.R. 295, 307 (Bankr. E.D. Va. 2004) (noting that courts ask whether a bankruptcy case is "in essence" a two-party dispute).

Here, the bankruptcy court found that Goden's bankruptcy case had become nothing more than a battleground for Goden and Rullan to "play out their hostilities" in what was essentially a two-party dispute. (ECF 16-11, at AA1186.) Although seven creditors filed claims, Rullan's claim commanded more than 99% of the total claimed amount.[6] Of the remaining fraction of a percent— amounting to approximately $30,000—the IRS asserted a non-dischargeable priority tax claim of $25,000. (*Id.* at AA1194.) The bankruptcy court questioned the case's lack of a bankruptcy-related purpose even before ultimately dismissing the case, noting in a prior order that "this case has been overtaken and is now nearly entirely consumed by disputes between Mr. Rullan and Ms. Goden." (*Id.* at AA1175 n.13.) For example, nearly every motion filed in the case was opposed and disputed. (*Id.* at AA1187.) Other courts have found dismissal is appropriate where a single creditor represents the "vast majority" of the claims. *See, e.g.*, *In re Woody*, 578 B.R. 739, 743 (Bankr. M.D.N.C. 2017) (citing *In re Griffieth*, 209 B.R. 823, 829 (Bankr. N.D.N.Y. 1996) ("If a single creditor represents the vast majority of the debt sought to be discharged, a court may construe the

---

[6] Seven creditors, including Rullan, filed claims totaling $5,948,128.68. Rullan's claim of $5,909,162 commanded more than 99% of that sum. Of the remaining $30,000, the IRS asserted a non-dischargeable priority tax claim of $25,000. (ECF 16-11, at AA1194.)

purpose of the debtor's filing a petition to be the 'singling out' of a major creditor in order to avoid payment of that debt.")

The bankruptcy court did not abuse its discretion in recognizing the other creditors had only a *de minimis* interest in the proceeding compared to Rullan. The court need "not elevate form over substance" in addressing this issue. *See In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship*, 216 B.R. 386, 391 (Bankr. D. Md.), *supplemented*, 227 B.R. 422 (Bankr. D. Md. 1998) (citing *In re Delray Assocs., Ltd. P'ship.*, 212 B.R. 511 (Bankr. D. Md. 1997)). The question is not whether Goden's bankruptcy *involved* only two parties, but whether the case was "*essentially* a two-party dispute." *See id.* (emphasis added). Claims from other creditors were not material to Goden's bankruptcy. After all, the aggregate sum of their claims amounted to pennies on the dollar compared to Rullan's claim. Perhaps this explains why no creditor other than Rullan responded to the bankruptcy court's order to show cause.[7] In any event, there was "no risk of asset depletion in favor of other creditors," underscoring the lack of a bankruptcy-related purpose. *In re Murray*, 900 F.3d at 62.

With no other creditors objecting to dismissal, Rullan constructs a counterfactual scenario where another creditor *might have* joined him in opposition. If only the IRS had known about Goden's "bogus 'management fees,'" Rullan postulates, the IRS would have pursued "an additional claim for approximately $1 million." (Appellant's Br. at 19.) The court declines to speculate about what the IRS *might have* done under different circumstances. The IRS voiced no opposition to dismissing Goden's bankruptcy, distinguishing this case from *In re Dreamstreet, Inc.*, 221 B.R. 724, 725 (Bankr. W.D. Tex. 1998), where the IRS opposed dismissal at a hearing.

---

[7] This is not to say other creditors consented to dismissal. The lack of objection simply provides some indication that a claim may not be significant enough to be "material."

To be sure, the fact that a bankruptcy case is essentially a two-party dispute "is not, by itself, cause for dismissal." *Collier on Bankruptcy, supra,* at § 707.03. Some courts, in their discretion, have refused to dismiss cases even where a single creditor accounts for all or nearly all the claims. *See, e.g., In re Dzierzawski,* 528 B.R. 397, 409, 414–15 (Bankr. E.D. Mich. 2015); *In re Spatz,* 221 B.R. 992, 994 (Bankr. M.D. Fla. 1998); *In re Khan,* 172 B.R. 613, 627 (Bankr. D. Minn. 1994). Rullan weaves those disparate examples together for the proposition that "two-party disputes are of no matter." (Appellant's Br. at 19.) But courts across the country regularly dismiss bankruptcy cases that boil down to two-party disputes.[8] And no authority suggests a bankruptcy court commits error simply by *considering* two-party disputes as one relevant factor in dismissal inquiries.[9]

This case is unlike any of those cited by Rullan. Goden filed for bankruptcy on the eve of her deposition in the 2012 Litigation, distinguishing her case from *Khan,* 172 B.R. at 627, where no evidence suggested the debtor filed for bankruptcy to avoid litigation in another tribunal. And unlike in *Dzierzawski,* 528 B.R. at 409, where a Michigan-specific statute threatened the creditor's ability to seek recovery outside the bankruptcy proceedings, Rullan faces no such roadblock here.

The Bankruptcy Code grants bankruptcy courts—not creditors—the discretion to decide whether to dismiss a case for cause. Rullan contends otherwise. A debtor, according to Rullan, is not entitled to dismissal without the affirmative consent of all creditors. (Appellant's Br. at 21.)

---

[8] *See, e.g., In re Axl Indus., Inc.,* 127 B.R. 482, 484 (S.D. Fla. 1991), *aff'd in part, dismissed in part,* 977 F.2d 598 (11th Cir. 1992) ("Generally, a court should not take jurisdiction over a two-party dispute, unless special circumstances exist."); *In re Kujawa,* 224 B.R. 104, 108 (E.D. Mo. 1998) (affirming bankruptcy court's abstention because the case was "essentially a two-party dispute"); *In re Efron,* 529 B.R. 396, 407 (B.A.P. 1st Cir. 2015) (affirming bankruptcy court's dismissal based on its finding that "the debtor's case did not serve a true bankruptcy purpose, and was essentially a two-party dispute").

[9] The bankruptcy court never suggested that the existence of a two-party dispute was *dispositive* in its decision to dismiss the case. Rather, the court considered it as one of many factors supporting dismissal.

But Rullan relies on cases involving a debtor's motion to dismiss, not dismissal following a bankruptcy court's order to show cause. *See, e.g.*, *In re Payne*, 240 B.R. 688, 689 (Bankr. D. Md. 1999) (citing *In re Pagnotta*, 22 B.R. 521 (Bankr. D. Md. 1982)) (stating that "Chapter 7 *debtors* should not be able to *voluntarily* dismiss their cases based upon 'a *mere change of heart*,' without the affirmative consent of all creditors, and especially not where the Chapter 7 trustee, who was seeking documents from the debtors, objected to the dismissal of their case") (emphasis added); *In re Astin*, 77 B.R. 537, 538 (Bankr. W.D. Va. 1987) (denying debtor's motion to voluntarily dismiss their bankruptcy case absent consent of creditors and because the creditors would be prejudiced). And none of those cases hold that a court abuses its discretion when dismissing a case over the objection of creditors.

Indeed, other courts have exercised their discretion to dismiss cases despite explicit opposition from a creditor. *See, e.g.*, *In re Holmes*, 631 B.R. 395, 398 (Bankr. D.S.C. 2021) (dismissing Chapter 7 case because it lacked a bankruptcy-related purpose as litigation in other forums was pending).[10] The differing perspectives on the issue highlight the broad latitude afforded to a bankruptcy court in exercising its discretion to dismiss a case for cause.

A creditor's objection does not trump a bankruptcy court's discretion where, as here, dismissal was prompted by the court itself, not the debtor. Rullan's interpretation of *Payne* and *Pagnotta* would ordain creditors with a *de facto* veto power over a bankruptcy court's decision to dismiss a case for cause. Such a proposition is untenable. Bankruptcy courts must not be precluded

---

[10] Rullan contends *Holmes* is inapposite because the trustee in that case consented to dismissal, a creditor had already been paid, and "the only asset available for liquidation is the Property and it is unclear whether any value will remain after administration is complete." (Appellant's Br. at 22.) Whether a trustee consents to dismissal is relevant, but not dispositive, as to whether a court may dismiss a case for cause. And the fact that a creditor had already been paid in *Holmes* has little bearing on the present case, where Rullan's claims amount to more than 99% of the total value of the claims. Finally, the fact that few assets were available for liquidation in *Holmes* is akin to the present case, where at one point in the litigation, a no-asset report was filed by the trustee. *See infra* Section I.C. Although the report was withdrawn, it is unclear whether any assets were available for liquidation at the time of dismissal.

from acting *sua sponte* in ways "necessary or appropriate" to effectuate the Bankruptcy Code. *See* 11 U.S.C. § 105(a). A court's *sua sponte* dismissal order flows from an objective judicial inquiry, not a "change of heart" by the debtor. Requiring the affirmative consent of creditors for *sua sponte* dismissal orders would constrain bankruptcy courts from using one of their essential tools needed to protect the integrity of the bankruptcy system.

Of course, bankruptcy courts can and should consider whether dismissal would prejudice creditors. But an objection to dismissal does not necessarily imply prejudice exists. And even assuming prejudice exists, a bankruptcy court may consider several other factors when dismissing a case for cause. For example, in *Murray* the Second Circuit affirmed a bankruptcy court's *sua sponte* order of dismissal despite opposition from the creditor. 900 F.3d at 58-61. The court noted that "[c]ause is a fact-specific inquiry as to which a *variety of factors* may be relevant[.]" *Id.* at 60 (emphasis added). There, the bankruptcy case was "a long-running, two-party dispute" that "had been brought solely as a judgment enforcement device for which adequate remedies existed in state law." *Id.* at 61.[11] Although the court concluded that dismissal would not substantially prejudice the creditor's interests, the court explained that other factors—such as the interest of the bankruptcy system as a whole—supported dismissal as well. *Id.* at 62–63.

The bankruptcy court here did not err in coming to a similar conclusion as the court in *Murray*. After *sua sponte* issuing an order to show cause, the bankruptcy court dismissed Goden's bankruptcy petition based on several distinct factors supported by factual findings. Some conclusions from the bankruptcy court, such as its finding that the case lacked any bankruptcy-related purpose, could support the order of dismissal even assuming Rullan faced some amount of

---

[11] Rullan brushes *Murray* aside because it involved an involuntary bankruptcy. *See* 900 F.3d at 62. Whether a bankruptcy petition is voluntary may be relevant to the context of dismissing a case for cause. But the bankruptcy court did not improperly apply the principles outlined by *Murray*. After all, *Murray* turned on an analysis of § 707(a), the same statutory authority used by the bankruptcy court to dismiss this case.

prejudice. No provision of the Bankruptcy Code suggests a creditor must sign off on dismissal when a court, of its own volition, determines a case should be dismissed due to a lack of a bankruptcy-related purpose. Rullan's position would essentially rewrite the statutory scheme to contain such a provision based only on examples of courts denying motions to dismiss filed by debtors themselves. *See, e.g.*, *In re Payne*, 240 B.R. at 689; *In re Pagnotta*, 22 B.R. at 521; *In re Astin*, 77 B.R. at 538. The bankruptcy court did not err in declining to confer such power to creditors.

### B. *Mutual Fault in the Misuse of the Bankruptcy Case*

The equitable powers of bankruptcy courts are "available only to those debtors and creditors with 'clean hands.'" *Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989) (quoting *Little Creek Dev. Co.*, 779 F.2d at 1072). Rullan contends the bankruptcy court erred by dismissing Goden's case despite finding that she had committed several bad acts. But Rullan both overstates the benefit Goden received from dismissal and understates his own misuse of the bankruptcy system.

The bankruptcy court did not "reward" Goden by dismissing her petition. In fact, creditors often seek dismissal because of a debtor's bad acts. *See, e.g.*, *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991) (affirming dismissal based on debtor's lack of good faith); *In re Woody*, 578 B.R. 739, 748 (Bankr. M.D.N.C. 2017) (dismissing Chapter 7 case based on debtor's bad faith). Still, Rullan argues the bankruptcy court gave Goden the ability to "refile another case in the bankruptcy court." (Appellant's Br. at 22–23.) But other provisions of the Bankruptcy Code hedge against serial bankruptcy filers. *See, e.g.*, 11 U.S.C. § 109(g) (barring the filing of a subsequent petition for 180 days under certain conditions); 11 U.S.C. § 349(a) (barring the discharge of debts that were previously dischargeable in a case that was dismissed, *inter alia*, upon a finding of cause);

11 U.S.C. § 362 (decreasing the length of an automatic stay in a new bankruptcy case under certain conditions).

Rullan's own misuse of the bankruptcy system undercuts his attempt to oppose dismissal on equity grounds. Rullan used the bankruptcy case mainly to determine whether Goden had enough assets to support a judgment in the 2012 Litigation. The bankruptcy court need not retain a case to assist a creditor's litigation tactics. For example, the Second Circuit in *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1309–10 (2d Cir. 1997), affirmed a dismissal for cause where the filing was the latest move in a two-party dispute that "could be fully resolved in a non-bankruptcy forum" and where the main function of the petition was to serve as a "litigation tactic." This issue is explored below. *See infra* Part II.A.

### C.  *Lack of Assets for Distribution*

To support its holding that Goden's case no longer served a bankruptcy-related purpose, the bankruptcy court noted that "there [were] no assets available for liquidation and/or distribution to creditors." (ECF 16-11, at AA1204.) Rullan disagrees. On appeal, he argues the bankruptcy court ignored evidence that Goden concealed jewelry, facilitated cash transfers to a bank account owned by her husband's company, and impermissibly retained rents. (Appellant's Br. at 24.) The bankruptcy court did not turn a blind eye to the evidence Rullan describes. In fact, the bankruptcy court qualified its findings: "As it *currently stands*, there are no assets available for liquidation and/or distribution." (ECF 16-11, at AA1204 (emphasis added).) The bankruptcy court did not state that assets could *never* be recovered or liquidated. The court merely held that, *at the time of dismissal*, the Trustee had not presented the bankruptcy court with concrete evidence of assets available for liquidation or distribution.

Before the bankruptcy court dismissed the case, the Trustee had previously filed, and subsequently withdrawn, a "No Asset Report" and a "Report of No Distribution." (ECF 10-54.) Generally, these reports indicate that "a trustee has finished his investigation" and concluded there are no assets to liquidate and nothing to distribute. (ECF 16-11, at AA1195.) Although the Trustee withdrew the reports a few months later, (ECF 7-12, Withdraw Asset Report), the Trustee's explanation was simply that he had been presented with "evidence of possible concealed assets." (ECF 16-11, at AA1195 (quoting ECF 283).) Over several years, the bankruptcy court asked the Trustee for status updates regarding his administration of the estate. The bankruptcy court became increasingly concerned that the case lacked a bankruptcy-related purpose during this time. In one of the final status conferences, the bankruptcy court realized the Trustee had provided no updates about his administration of the estate in over four months. These facts support the bankruptcy court's decision. *See Holmes*, 631 B.R. at 398 (dismissing case when "[a]fter more than two years th[e] case show[ed] little progress" and noting the "trustee ha[d] not begun to liquidate the Property and, due to litigation, may [have] not be[en] in a position to do so for some time").

A trustee may not indefinitely search for assets after a bankruptcy court declares, in its reasoned discretion, enough is enough. Although courts give "great weight" to a trustee, deference for the sake of deference cannot swallow other considerations, such as the lack of a bankruptcy-related purpose. This case presented the bankruptcy court with a difficult decision. The bankruptcy court's recognition that Goden had, in fact, concealed and misrepresented certain information shows as much. But after balancing the totality of the circumstances at issue,[12] the bankruptcy

---

[12] Rullan argues in various places that the bankruptcy court refused to evaluate several of his motions. For example, he describes a certain motion to compel as "yet another motion the Court failed to rule on or even apparently consider before dismissal." (Appellant's Br. at 25.) This court disagrees with that characterization, as the bankruptcy court explicitly noted that it held several status conferences to discuss pending papers prior to dismissal.

court determined the lack of bankruptcy-related purpose outweighed the speculative[13] chance of recovery and liquidation at some later date. *See Murray*, 900 F.3d at 62 ("[A creditor's] preference for bankruptcy remedies to solve a two-party dispute cannot outweigh the lack of any other bankruptcy-related purpose"). Though Rullan and the Trustee may disagree with the bankruptcy court's resolution of this difficult issue, their disagreement does not imply an abuse of discretion.

### D. Dismissal Best Serves the Interests of the Creditors, the Debtor, and the Estate

The bankruptcy court concluded that the interests of the creditors, the debtor, and the estate were better served by dismissal. This court does not disagree. As for the creditors, by dismissing the bankruptcy case, creditors were freed from the constraints of a judicial stay. If this court were to reverse the bankruptcy court's dismissal order, creditors would again be forced to pause collection efforts against Goden. Rullan, as the creditor with the most significant claim, could consolidate his litigation efforts upon dismissal. Rullan even recognizes that the case has been dominated and delayed by procedural gamesmanship from the parties. His counsel stated in a status conference on January 14, 2021, for example, that "the Debtor and her codefendants have been very successful at playing ping-pong. We'll get things done in one court and then we'll get a stay. And then we'll get a stay in the other court." (ECF 9-46, Tr., at 44:1–44:4) The bankruptcy court did not abuse its discretion in refusing to let the parties treat the Bankruptcy Code as a mere game.

The upshot is that Rullan has adequate remedies outside the bankruptcy system and dismissal gives Rullan the ability to focus on securing a judgment in the District Court. *See Murray*, 900 F.3d at 62 (dismissing bankruptcy because creditor had alternative remedies). After

---

[13] Even Rullan's brief on appeal demonstrates the speculative nature of the Trustee's search for assets. For example, Rullan contends "there *are possibly* millions of dollars in the Evelyn Greenberg Revocable Trust and the Frederick Greenberg Revocable Trust in which Goden had interests[.]" (Appellant's Br. at 25 (emphasis added).). The mere possibility of assets is not sufficient to demonstrate the bankruptcy court abused its discretion in dismissing the case.

all, Rullan's claim in the bankruptcy court *required* a judgment in his favor in the District Court, so dismissal would ensure Rullan's cart is no longer in front of his horse.

As for the estate, the bankruptcy court correctly identified the potential difficulties the Trustee would face in conducting a private sale. The court has no reason to disturb the bankruptcy court's conclusion that secured creditors may be better off in a foreclosure action. The Trustee would need consent from secured creditors given that the property is worth less than the debt owed. Even if the secured creditor consented to such a sale, there would be a host of other costs— commission to the Trustee, for example—that would benefit neither the estate nor creditors.

In sum, the bankruptcy court here did not abuse its discretion in "declin[ing] to serve as a 'rented battlefield' or collection agency.'" *See Murray*, 900 F.3d at 63.[14] If this court were to reverse the bankruptcy court's decision there is no telling how long this case will remain in procedural purgatory at great expense to judicial economy. In affirming dismissal, the parties will no longer be able to "ping-pong" between the bankruptcy and District Court. Accordingly, the bankruptcy court's dismissal order will be affirmed.[15]

## II.   Rullan's Motion for Sanctions

The court next turns to the bankruptcy court's denial of Rullan's motion for sanctions. Rullan's motion in the bankruptcy court alleged that Goden had made a series of fraudulent misstatements and omissions. The bankruptcy court, according to Rullan, could sanction this conduct under the court's "inherent power" to prevent the abuse of the bankruptcy process. As

---

[14] To the extent Rullan suggests the timeline for dismissal was inappropriate, he is incorrect. "[T]he formalities of a full-blown evidentiary hearing are not required" so long as the parties were "afforded adequate opportunity to tell the court why [a] petition should not be dismissed." *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991).

[15] Because this court affirms the court's order of dismissal and order denying sanctions, the case will not be remanded to the bankruptcy court. Accordingly, Rullan's appeal of the "constructive denial" of the Trustee's outstanding motions, as well as Rullan's request for a new judge on remand, will both be dismissed as moot.

sanctions for the alleged misconduct, Rullan urged the bankruptcy court to deny Goden a discharge in bankruptcy, enjoin Goden from future bankruptcy filings, and award Rullan attorneys' fees. The bankruptcy court denied each of Rullan's requests. This court finds no reversible error and affirms the bankruptcy court's order denying Rullan's motion for sanctions.

When bad-faith conduct occurs in litigation, a court should first ask whether the misdeeds "could be adequately sanctioned under the Rules . . . ." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). If neither statute nor rule adequately sanctions the misconduct, a court may rely on its inherent power. *See id.* Still, a court's inherent power "must be exercised with restraint and discretion." *See id.* at 44.

Accepting the allegations as true,[16] the bankruptcy court here concluded the relevant statutes and rules were "up to the task" in addressing Goden's conduct. *See id.* at 50. The bankruptcy court noted, for example, that a debtor may be denied a discharge if she conceals assets or files false schedules. *See* 11 U.S.C. § 727. Other statutory provisions authorize bankruptcy trustees to avoid certain preferential transfers and fraudulent conveyances. *See, e.g.*, 11 U.S.C. §§ 547-549. And the Federal Rules of Bankruptcy Procedure provide that a party may seek to deny a debtor's discharge through an adversary proceeding. *See* Fed. R. Bankr. P. 4004(d). These exact procedural devices were used in the proceedings below, with Rullan filing an adversary proceeding against Goden and a Chapter 7 trustee being involved for nearly seven years. Drawing on its expertise and familiarity with these statutes, the bankruptcy court found that relying on its inherent authority was unnecessary.

---

[16] Rullan contends the bankruptcy court failed to assess all of the evidence in declining to sanction Goden. (Appellant's Br. at 38.) To the extent the bankruptcy court omitted certain details, those omissions do not constitute reversible error. The bankruptcy court described the general categories of Goden's bad-faith and impermissible conduct, and even explicated several specific examples.

Still, a court is not forbidden from "sanction[ing] bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Chambers*, 501 U.S. at 50. Here, the bankruptcy court did not abuse its discretion by declining to exercise its inherent power. *See id.* (explaining that a court must "exercise caution in invoking its inherent power").

### A. Attorneys' Fees

As to the request for attorneys' fees, the bankruptcy court declined to award attorneys' fees because Rullan did not identify specific fees in his motion, and because he sought discovery for use in the District Court litigation. Rullan has cited no authority suggesting the bankruptcy court committed reversible error by declining to award an unspecified amount of fees. Each case cited by Rullan suggests that courts *may* evaluate requests for fees before specification, not that a court *must* do so. In the since-vacated *Northern Plains Resource Council v. EPA*, 670 F.2d 847, 848 n.1 (9th Cir. 1982), *judgment vacated sub. nom.*, 464 U.S. 806 (1983), the Ninth Circuit mentioned only that the "failure to specify the amount requested *does not require* denial of the motion."[17] And *Haygood v. Morrison*, 819 F. App'x 288, 288 (5th Cir. 2020) (per curiam), only provides an example of a district court exercising its discretion to grant a motion for fees without a specific amount. None of Rullan's cases establish that a court errs by denying a request for attorneys' fees on these grounds.

Indeed, the Federal Rules of Civil Procedure ordinarily require parties seeking attorneys' fees to identify the amount sought. Rullan quotes Fed. R. Civ. P. 54(d)(2)(C), which provides that a "court *may* decide issues of liability for fees before receiving submissions on the value of

---

[17] Omitted from Rullan's brief is the part of that sentence conceding that "the amount of attorney's fees requested *should generally be included* in a motion for attorney's fees . . . ." *See N. Plains Res. Council*, 670 F.2d at 848 n.1.

services." *See* Fed. R. Civ. P. 54(d)(2)(C) (emphasis added). Notwithstanding the permissive nature of the quoted provision, Rullan omits the preceding provision, which requires specification or a fair estimate of fees: "Unless a statute or a court order provides otherwise, the motion *must . . . state the amount* sought or provide a fair estimate of it[.]" *See* Fed. R. Civ. P. 54(d)(2)(B) (emphasis added).

Further, the Fourth Circuit has found that courts act within their discretion in denying fee awards where "counsel did nothing to allocate the time spent on each claim" or to "describe the work" justifying the fee award. *See Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 283 (4th Cir. 2006) (citation omitted). In resolving this issue, the Fourth Circuit explicitly declined to rely on "isolated language from another circuit's precedent," much like the cases cited by Rullan. *See id.*; *see also Gregory v. Belfor USA Grp., Inc.*, 2014 WL 468923, at *4 (E.D. Va. Feb. 4, 2014) (quoting *Morris*, 448 F.3d at 283–44) (describing "the Fourth Circuit's guidance that the fee applicant 'must present a request from which the correct amount may be computed with reasonable dispatch,' by 'specifically allocat[ing] the time spent on each claim' and 'specifically describ[ing] the work which the fee applicant allocated to unsuccessful claims'").

Rullan next contends the bankruptcy court erred by denying him attorneys' fees because he intended to use discovery in the District Court case. Rullan cites a slew of black-letter law for the simple proposition that parties may obtain discovery about non-privileged matters relevant to any party's claim or defense and proportional to the needs of the case. Contrary to Rullan's interpretation, the bankruptcy court never disagreed. The bankruptcy court declined to award Rullan attorneys' fees not because the discovery was irrelevant but because the very reason the discovery was even taking place was to serve a litigation objective in a different proceeding. By requesting attorneys' fees, Rullan asked the estate to compensate his own litigation objectives for

use in a separate forum. Although reasonable minds may disagree, this decision was within the bankruptcy court's discretion. *See In re Kestell*, 99 F.3d 146, 149 (4th Cir. 1996) ("[T]he Bankruptcy Code, both in general structure and in specific provisions, authorizes bankruptcy courts to prevent the use of the bankruptcy process to achieve illicit objectives.").

The bankruptcy court did not err in refusing to compensate Rullan for his attempt to "determine the extent of any possible recovery related to litigation in another forum." (ECF 16-11, at 1178.) The Federal Rules of Bankruptcy Procedure distinguish between discovery in bankruptcy proceedings and discovery in other courts. Courts have expressed concern that certain discovery tools available in bankruptcy, such as FRBP 2004 examinations, may "be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure." *In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) (citations omitted). Other courts have expressed heightened skepticism when a party's "primary motive" for discovery is for use in litigation outside the bankruptcy system. *See Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994), *aff'd sub nom. In re Snyder*, 52 F.3d 1067 (5th Cir. 1995) (holding the bankruptcy court did not abuse its discretion in denying motion for sanctions where appellant sought documents for use in parallel state court litigation).

In Rullan's attempt to "discover" available assets "that would support a judgment," he sought to do in the bankruptcy court what the Federal Rules of Civil Procedure may have prohibited. (*See* ECF 10-29, June 21, 2021 Hr'g Tr., at 10:17–19.) "Rather than conduct pre-judgment discovery into a defendant's assets or ability to satisfy a judgment, an appropriate means of obtaining such information is to conduct post-judgment discovery pursuant to Federal Rule of Civil Procedure 69(a)(2)." *Sierrapine v. Refiner Prod. Mfg., Inc.*, 275 F.R.D. 604, 610 (E.D. Cal.

2011).[18] Rullan argues that Goden never "object[ed] that [his] discovery was outside of the discovery order or was otherwise improper." (Appellant's Br. at 32.) But Rullan's contention is contradicted by the record, which reveals Goden's counsel explicitly objected on these precise grounds. (*See* ECF 16-5, at AA478.)[19] And the bankruptcy court explicitly raised this issue during a status conference on June 21, 2021, when the court asked Rullan's counsel why they were seeking discovery of collectable assets *before* judgment. (ECF 10-29, at 13:9–18.) Accordingly, the bankruptcy court did not commit reversible error in declining to award attorneys' fees.

## B. Permanent Injunction

Rullan next contends the bankruptcy court erred by declining to permanently enjoin Goden from filing for bankruptcy. The bankruptcy court noted correctly that "[a]n indefinite injunction against future bankruptcy filings is an exceedingly rare and draconian sanction." (ECF 16-11, at AA1175.) In the infrequent situations where courts did issue permanent injunctions, the debtors in those cases committed serious offenses *and* were serial bankruptcy filers. *See, e.g.*, *In re Jones*, 289 B.R. 436, 437, 442 (Bankr. M.D. Ala. 2003) (debtor filed five petitions in five years); *In re McCoy*, 237 B.R. 419, 422–23 (Bankr. S.D. Ohio 1999) (debtor filed eight petitions in eight years). Despite the bankruptcy court finding that Goden had committed several bad acts, this case appears

---

[18] Rule 69(a)(2) provides: "*Obtaining Discovery*. In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2).

[19] In response to discovery requests, Goden's counsel objected on the following grounds: "In summary, it is neither permissible nor appropriate for you to conduct what can *best be described as post judgment/collection discovery* in this proceeding. The current assets, finances and business dealings of Ms. Goden's and her husband are *entirely irrelevant to the claims in your client's sanctions motion*. Your discovery requests in this matter are overly broad, and appear to be made for the purpose of oppression and annoyance, and to place an undue burden upon Ms. Goden." (ECF 16-5, at AA478 (emphasis added).)

to be Goden's *first* bankruptcy petition. After considering all the relevant evidence,[20] the bankruptcy court exercised its discretion in declining to prevent Goden from filing for bankruptcy ever again. In the bankruptcy court's discretion, it determined that Goden's bad acts were a necessary but not sufficient condition for such a severe sanction. Although Rullan is reasonable in believing that Goden's conduct was a serious offense, the bankruptcy court did not abuse its discretion in declining to impose such a severe sanction based on Goden's conduct.

Although the bankruptcy court's factual findings may have provided grounds for imposing sanctions, the bankruptcy court was not *compelled* to do so. This court must respect the standard of review. Because the bankruptcy court did not abuse its discretion, the bankruptcy court's order denying Rullan's motion for sanctions will be affirmed.

### III.    The Constructive Denial of the Trustee's Motions

The Trustee also appeals the bankruptcy court's "constructive denial" of his motion to employ Rullan's counsel as special counsel to investigate the fraudulent transfer of assets. The Trustee also appeals the "constructive denial" of his motions for the "turnover of rents," "to employ realtor," and "to employ rental agent." Once the bankruptcy court dismissed Goden's petition, the Trustee's motions were moot. Once a case is closed, there is no need for special counsel, or any other relief sought by the Trustee. But the Trustee raises a novel argument, contending the bankruptcy court's *delay* in ruling on his motions was reversible error. Neither the Trustee nor Rullan cites a single case for this proposition.

---

[20] Rullan again argues the bankruptcy court ignored evidence of Goden's malfeasance. (Appellant's Br. 22–23.) This court disagrees. The bankruptcy court provided an extensive summary of Goden's bad acts. Further, it is difficult to see how the bankruptcy court understated Goden's actions when the court even assumed Rullan's allegations were true for the purpose of resolving the motion.

To the extent the Trustee urges the review of the speed at which the bankruptcy court addresses non-dispositive motions, this court declines to do so for lack of jurisdiction. It is unclear whether the timing of the bankruptcy court's docket management constitutes an appealable order. The Trustee has not shown the bankruptcy court unjustifiable delayed ruling on his motions. *See Cont'l Cas. Co. v. Staffing Concepts, Inc.*, 538 F.3d 577, 580 (7th Cir. 2008) (citing *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 526–27 (7th Cir.1996)) (explaining that a "deferral of consideration" is "transformed into a constructive denial of relief" only when a "showing of unjustifiable delay" is "coupled with irreparable injury if an immediate appeal is not allowed").

This court need not wade into the unfamiliar waters of managing the day-to-day nuances of bankruptcy litigation. The Bankruptcy Judge in this case, according to Rullan, faces substantial docket pressure. (*See* Appellant's Br. at 52.) This particular case is extremely complex. Each motion has been passionately disputed. And the Trustee's motion to employ counsel targets conduct, such as Goden's fraudulent conveyance of assets, that is already challenged in other cases. Accordingly, it was within the bankruptcy court's discretion to rule on the Trustee's motions when it saw fit, and it did not abuse its discretion in ultimately denying the Trustee's motions as moot upon dismissal of Goden's case.

## CONCLUSION

Goden's petition lingered in the bankruptcy court for more than seven years. To quote Rullan's own description of the proceeding, Goden had "drag[ged] Rullan, six other creditors, and the Trustee through a bankruptcy proceeding that was filed in bad faith." (Appellant's Br. at 16.) Recognizing the proceeding no longer served any "legitimate bankruptcy purpose," the bankruptcy court dismissed Goden's petition after issuing an order to show cause. With Rullan's scathing description of the proceedings, one could imagine he would have celebrated dismissal—after all,

he would no longer be "dragged" through yet another courtroom to seek relief. Whatever Rullan's reason for opposing dismissal, the bankruptcy court's conclusions were well-reasoned, based on sufficient factual findings, and within its sound discretion.

For these reasons, the court will affirm the decisions of the bankruptcy court. A separate Order follows.

_____9/21/22_____
Date

_____CCB_____

Catherine C. Blake
United States District Judge